IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILARY KOPROWSKI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS JEFFERSON UNIVERSITY, | : | No. 10-3936 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                          October 8, 2010

On August 6, 2010, Plaintiff Hilary Koprowski filed a complaint against his employer, Thomas Jefferson University ("Jefferson"). Koprowski's Amended Complaint alleges violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, along with related breach of contract claims. These claims arise from Jefferson's decision to end its relationship with Koprowski's research foundation, reduce his staff, and relocate his office. Koprowski moved for a preliminary injunction seeking to: (1) require Jefferson to engage with him in the ADA-mandated interactive process; (2) stop Jefferson from moving Koprowski's property from the offices and labs he currently occupies; and (3) prohibit Jefferson from barring Koprowski's personal staff from its campus. The parties presented argument and testimony on Koprowski's motion on September 27, 2010. Because he has failed to demonstrate that he will suffer irreparable harm warranting injunctive relief, the Court will deny Koprowski's motion.

I.     BACKGROUND

Koprowski is a distinguished 93-year-old physician currently employed by Jefferson's Department of Cancer Biology. (Am. Compl. ¶¶ 6-10.) In this capacity, Koprowski applies for and

executes research grants. He established a non-profit entity, the Biotechnology Foundation, to administer these grants. (*Id.* at ¶ 38.) Grants are awarded to the Foundation, which in turn subcontracts with Jefferson to secure lab space and research support with grant funds. (*See* Am. Compl. Ex. H [Subcontract Agreement Between the Biotechnology Foundation and Thomas Jefferson University].) Two such subcontract arrangements are at issue in this case: one involving a grant from the U.S. Department of Agriculture, and one arising from funding provided by the Pennsylvania Department of Health. (Am. Compl. ¶ 39.)

Jefferson ended its relationship with the Biotechnology Foundation on June 30, 2010, as it confirmed in a letter to Koprowski's attorney dated July 9, 2010. (Am. Compl. Ex. C [July 9, 2010 Letter from Cristina Cavalieri to Richard Sprague].) Jefferson does not permit research which is not supported by external funding on its campus and subsequently moved to close down the labs Koprowski's research team had been using. (Jefferson University's Opp'n to Pl.'s Mot. for Prelim. Inj. Exs. 5, 10 [June 8, 2010 Letter from Robert Barchi to Hilary Koprowski; TJU Research Laboratory Policy and Procedure].) Jefferson offered to assist Koprowski "in helping the Lab make an orderly transition from TJU to other readily available hosted lab space in Philadelphia" if the Biotechnology Foundation chose to continue the research at its own expense. (Barchi Letter)

Jefferson terminated its relationship with Koprowski's lab employees around July 9, 2010. (Jefferson Opp'n Ex. 8 [August 6, 2010 Letter from William Harvey to Alan Epstein].) However, Jefferson extended Koprowski's contract through June 30, 2011. (Barchi Letter.) When Koprowski requested a $34,000 increase over Jefferson's initial $100,000 salary offer for his terminal year contract, Jefferson Medical College Dean Mark Tykocinski replied in a June 14, 2010 e-mail that, despite the fact that the institution's budget had already been finalized, it would "look

2

to decrease . . . expenses in other areas in order to meet your request for bringing the compensation up to $134,000 – in no small part in recognition of your institutional stature." (Opp'n Ex. 2 [June 14, 2010 E-mail from Mark Tykocinski to Hilary Koprowski].) Tykocinski also noted that Jefferson was reviewing options for Koprowski's new office "during this final year prior to your planned retirement." (*Id*.)

Nevertheless, Koprowski filed a charge of discrimination with the Pennsylvania Human Relations Commission and federal Equal Employment Opportunity Commission ("EEOC") on July 19, 2010. (Am. Compl. Ex. E [EEOC Charge].) Koprowski alleges in this charge that Jefferson failed to accommodate his age-related disabilities by declining to allow him to retain his personal staff at his own expense and generally refusing to engage in the required interactive process to discuss accommodations necessary to enable him to continue his work. (*Id*.) Though his EEOC charge appears to be pending, Koprowski then filed the present lawsuit on August 6, 2010.

That same day, Jefferson's counsel sent Koprowski a letter offering to provide his driver, administrator and secretary with campus credentials which will permit them access to Koprowski's new office. (Harvey Letter) Two weeks later, on August 23, Tykocinski sent Koprowski a letter identifying M-77 in Jefferson's Alumni Hall as his new office. (Opp'n Ex. 3 [August 23, 2010 Letter from Mark Tykocinski to Hilary Koprowski].) Tykocinski's letter indicated that this location contains a private bathroom, an office, and an anteroom for two administrative assistants. Koprowski responded that the move would be "too hard and therefore unacceptable" to him. (Opp'n Ex. 4 [August 24, 2010 E-mail from Hilary Koprowski to Mark Tykocinski].)

The parties appeared for an evidentiary hearing on September 27, 2010. At this hearing, Koprowski explained that the move to M-77 would force him to disturb the organization of his

library, which has been carefully arranged over many years to allow him to find and access particular publications. Koprowski's assistant Suzanne Jones also testified that the new office might present a safety hazard to Koprowski, as furniture in the smaller space might trip him or get in his way. Tykocinski, meanwhile, testified that Koprowski's new office is over 400 square feet in size, and is approximately fifteen feet—two doors down—from Koprowski's current office.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(a) requires parties moving for a preliminary injunction to show: (1) irreparable harm; (2) a likelihood of success on the merits; (3) that the harm to the moving party outweighs the possible harm to other interested parties; and (4) that granting relief is in the public interest. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010). The movant must produce evidence "sufficient to convince the trial judge that all four factors favor preliminary relief." *Singh v. Sch. Dist. of Phila.*, Civ. A. No. 10-2028, 2010 WL 3220336, at *6 (E.D. Pa. Aug. 11, 2010) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

## III.  DISCUSSION

Courts should grant preliminary injunctions only upon the moving party's showing "that it specifically and personally risks irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009). Harm which is redressable by a legal or equitable remedy following a trial is not irreparable. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). In addition, the harm must be immediate, not merely "possible, speculative or remote." *Alliance

*Bank v. New Century Bank*, Civ. A. No. 10-2249, 2010 WL 2991204, at *26 (E.D. Pa. July 27, 2010).

The potential harms Koprowski identifies boil down to the inconvenience involved in moving his personal library down the hall and the possibility, mentioned by Jones, that the smaller size of the new office will cause Koprowski to trip over his furniture and injure himself.

Koprowski testified that he has hundreds of publications which will need to be sorted and rearranged when he moves to M-77. Such annoyances do not constitute irreparable harm. *Cf. Moteles v. Univ. of Pa.*, 730 F.2d 913, 919 (3d Cir. 1984) ("If a discharge from employment with all of its attendant difficulties is not irreparable injury, it is obvious that the involuntary transfer to another shift amounts to nothing more than inconvenience – not enough to warrant the issuance of a preliminary injunction."); *Vine Street Concerned Citizens, Inc. v. Dole*, 604 F. Supp. 509, 513-14 (E.D. Pa. 1985) (finding that inconvenience caused by construction of temporary service road did not amount to irreparable harm). The inconvenience of rearranging his library thus does not entitle Koprowski to a preliminary injunction.

The falling risk presented by the size of Koprowski's new office likewise does not warrant the extraordinary remedy of injunctive relief. The possibility that the size of M-77 will force Koprowski to place his office furniture in a way that will increase the risk of his tripping and falling is conjecture. The evidence presented on this point thus fails to support Koprowski's request for a preliminary injunction.

## IV. CONCLUSION

Failure to show irreparable injury warrants denial of a motion for a preliminary injunction.

*See, e.g.*, *Pennsy Supply, Inc. v. Susquehanna River Basin Comm'n*, Civ. A. No. 06-2454, 2007 WL 551573, at *1 (M.D. Pa. Feb. 20, 2007). The Court will thus deny Koprowski's motion. An Order consistent with this Memorandum will be docketed separately.